UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT TYREE MITCHELL, <br><br> Plaintiff, <br><br> v. <br><br> GWINNETT COUNTY PUBLIC SCHOOLS, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:25-CV-01870-JPB |

### ORDER

This matter is before the Court on Robert Tyree Mitchell's ("Plaintiff") Motion to Withdraw Initial Filing [Doc. 5], Motion to File Medical Documents Under Seal [Doc. 6] and Emergency Motion for Temporary Restraining Order [Doc. 7]. This Court finds as follows:

### BACKGROUND

Plaintiff filed an Application for Leave to Proceed In Forma Pauperis in this case on April 7, 2025, [Doc. 1], which United States Magistrate Judge Linda T. Walker granted on April 10, 2025, [Doc. 3]. Shortly thereafter, Plaintiff filed an Amended Complaint along with a Motion to Withdraw Initial Filing. [Doc. 4]; [Doc. 5]. On the same day, Plaintiff also filed a Motion to File Medical

Documents Under Seal and a Motion for Temporary Restraining Order.  [Doc. 6]; [Doc. 7].

In his Amended Complaint, Plaintiff alleges that he faced discrimination and retaliation from Gwinnett County Public Schools ("GCPS") and Gwinnett County School Board (collectively, "Defendants") because of his disability in violation of the Americans with Disabilities Act ("ADA").  [Doc. 4].  Plaintiff also claims that Defendants wrongfully refused him protected leave in violation of the Family and Medical Leave Act ("FMLA").  Id.  Further, Plaintiff asserts that Defendants violated the Rehabilitation Act and failed to meet the requirements set forth under the Employee Retirement Income Security Act ("ERISA") and Consolidated Omnibus Budget Reconciliation Act ("COBRA") for notice regarding Plaintiff's benefits.  Id.

Plaintiff claims that he has been diagnosed with "Generalized Anxiety Disorder, a qualifying disability under the ADA and Rehabilitation Act" and that, because of his condition, he formally requested accommodations from GCPS on July 19, 2024.  Id. at 3–4.  Plaintiff alleges that GCPS proposed their own accommodations "without medical justification," questioned the legitimacy of Plaintiff's condition and caused delays in the accommodations process, which ultimately resulted in Plaintiff suffering from "28 documented panic attacks"

between October and December of 2024.  Id. at 4–5, 9.

Plaintiff further claims that Defendants violated his rights under the FMLA.  Plaintiff asserts that he became eligible for FMLA leave on December 9, 2024.  Id. at 5.  Despite Plaintiff's purported protected status, he argues that GCPS wrongfully ordered him to return to work on January 9, 2025, and misclassified his leave as "potential job abandonment."  Id. at 6.  Plaintiff claims that, because GCPS wrongfully forced him to return to work before the end of his FMLA leave period, he suffered a medical emergency.  Id.  Plaintiff also alleges that GCPS misclassified his protected leave as unpaid leave, changed his status to paid leave pending an evaluation of Plaintiff's fitness for employment, instructed him to re-apply for FMLA leave, blocked his return to work in February of 2025 and claimed that he was on unpaid leave in March of 2025.  Id. 6–7. Exacerbating Plaintiff's confusion, he alleges that a human resources representative for GCPS told him that his "FMLA-protected period extended from December 9, 2024, through March 20, 2025."  Id. at 7.

During this same period, Plaintiff also asserts that GCPS wrongfully altered his benefits status, initially claiming that insurance premiums could no longer be deducted from his paycheck, sent him to the wrong portal for payment of his insurance premiums and terminated his benefits "without proper notice or

3

legal justification"[1] on March 19, 2025. Id. at 7–8. Additionally, Plaintiff alleges that GCPS backdated his benefits termination to March 1, 2025, and that he later received a letter from GCPS "falsely claiming that [he] had elected to terminate his insurance." Id. at 9. Later, Plaintiff states that he received a second letter indicating that someone terminated his health insurance coverage effective February 28, 2025, contradicting the first letter, and that GCPS withheld his March paycheck, which left him with no way to verify the status of his benefits or compensation. Id. Plaintiff also claims that GCPS failed to give him proper notice regarding the status of his benefits and failed to provide required COBRA information or continue his medical benefits during his FMLA leave. Id. at 9, 14. Finally, Plaintiff alleges that—while he was still on protected FMLA leave—GCPS elected not to renew his employment contract for the coming school year. Id. at 10.

As a result of Defendants' alleged wrongdoing, Plaintiff claims that he has suffered serious medical and financial repercussions. Id. at 9–10. Plaintiff contends that he faces eviction and repossession of his vehicle and that he is without insurance and in debt. Id. Plaintiff asserts claims under the ADA,

---

[1] Plaintiff acknowledges, however, that Defendant's March 19, 2025 letter terminating his benefits stated that "the balance for [his] account [was] past due." [Doc. 4, p. 8].

4

Section 504 of the Rehabilitation Act, the FMLA, ERISA and COBRA.  Id. at 11–15.  Stemming from these allegations, Plaintiff seeks damages, a declaratory judgment and injunctive relief.  Id. at 15–16.[2]

## ANALYSIS

**I.    Plaintiff's Motion to Withdraw Initial Filing**

In his Motion to Withdraw Initial Filing, Plaintiff claims that, when he first filed this matter, he was "under significant duress" and that his "initial filing was incomplete, submitted without supporting exhibits, and does not adequately present Plaintiff's claims or the grounds for emergency relief."  [Doc. 5, p. 1].  Under Federal Rule of Civil Procedure 15, a party may amend its pleading "once as a matter of course no later than . . . 21 days after serving it."  Fed. R. Civ. P. 15(a)(1).  Here, the Clerk docketed Plaintiff's initial filing—construed as a complaint—on April 7, 2025, [Doc. 2], and Plaintiff filed his Amended Complaint on April 14, 2025, [Doc. 4].  When a plaintiff files an amended complaint, the new filing "supersedes" the old one, rendering the previous filing without legal effect.  Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 35 (2025).  As such, because Plaintiff filed his Amended Complaint within the time

---

[2] In support of his Amended Complaint, Plaintiff also filed several attachments, which appear as exhibits to his Motion to File Medical Documents Under Seal.  [Doc. 6].

5

frame set forth under Rule 15 for amending as a matter of right, his Amended Complaint supersedes his original filing. Accordingly, Plaintiff's Motion to Withdraw Initial Filing [Doc. 5] is **DENIED** as **MOOT** because his Amended Complaint [Doc. 4] is already the operative complaint in this action.

II.     **Plaintiff's Motion for Temporary Restraining Order**

On the same day that he filed his Amended Complaint, Plaintiff also filed an Emergency Motion for Temporary Restraining Order wherein he seeks immediate, *ex parte* relief. [Doc. 7]. In his motion, Plaintiff repeats several of the same allegations lodged in his Amended Complaint concerning violations of his rights under the ADA, FMLA, Rehabilitation Act, ERISA and COBRA. Id. Plaintiff alleges that, absent a temporary restraining order, he will suffer irreparable harm—including homelessness, loss of transportation, utility disruptions, adverse medical consequences, reputational harm and financial harm. Id. at 9–10. Plaintiff further argues that the balance of hardships weighs in favor of granting him immediate injunctive relief, that he has a substantial likelihood of success on the merits of his claims and that an injunction is in the public interest. Id. at 8–19. In his motion for a temporary restraining order, Plaintiff makes several specific requests related to his employment status, restrictions on Defendants' actions towards him and payments of "emergency relief" funds to

"prevent imminent financial crisis." Id. at 20–22.

Regarding notice, Plaintiff includes a section in his motion titled, "Efforts to Resolve Without Court Intervention." Id. at 23. Plaintiff recounts his previous difficulty obtaining responses from Defendants along with the issues experienced by an investigator looking into Plaintiff's claims. Id. Plaintiff also requests that the Court rule without notice to Defendants pursuant to Rule 65(b)(1) because he claims that "Defendants have consistently responded to [his] protected activities with punitive measures" and cites several exhibits attached to his Motion to File Medical Documents Under Seal. Id.

Under Federal Rule of Civil Procedure 65(b)(1), a court may issue a temporary restraining order ("TRO") without written or oral notice to the adverse party or its attorneys only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reason why it should not be required.

Both prongs of Rule 65(b)(1) must be met for the Court to grant an *ex parte* TRO. "The stringent restrictions imposed by . . . [Rule 65] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an

7

opportunity to be heard has been granted both sides of a dispute." Granny Goose Foods, Inc. v. Brotherhood of Teamsters Loc. No. 70, 415 U.S. 423, 438–39 (1974). Accordingly, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).[3]

Although proceeding with an *ex parte* TRO as provided under Rule 65(b) is permissible in some circumstances, Plaintiff has not shown that those circumstances are present in this case. First, Plaintiff has not explained why notice to Defendants should not be required. See Fed. R. Civ. P. 65(b)(1)(B). While Plaintiff alleges that notice to Defendants risks additional harm to him, this allegation is conclusory, as he does not elaborate on the specific adverse actions he fears Defendants will take if they are given notice of his request. Second, Plaintiff fails to provide "specific facts set forth in an affidavit or a verified complaint," as required under Rule 65(b)(1)(A). Smiley v. Gibson, No. 18-CV-728, 2018 WL 4496491, at *1 (M.D. Ala. Sept. 19, 2018) (denying a plaintiff's request for a TRO because the plaintiff's allegations of retaliation were not sworn or verified and

---

[3] Such circumstances include when "the opposing side is unable to be found or the identity of the opposing side is unknown," and, "[i]n some limited circumstances, proceeding without notice is also justified upon a showing that notice would lead to the destruction of evidence." Glob. HTM Promotional Grp., Inc. v. Angel Music Grp., LLC, No. 6-20441-CIV, 2006 WL 8432722, at *1 (S.D. Fla. Mar. 1, 2006).

because the allegations were "conclusory"); see also Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'" (quoting Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002))); Vaughan v. Bank of Am., NA., No. 10-0453, 2010 WL 3273052, at *1 (S.D. Ala. Aug, 18, 2010) ("The requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard, but rather crucial safeguards of due process." (citing Austin v. Altman, 332 F.2d 272, 275 (2d Cir. 1964))).[4]

---

[4] Plaintiff lists several allegedly "immediate and irreparable harms that cannot be remedied through monetary damages alone." [Doc. 6, pp. 14–16]. These purported harms include loss of housing, loss of healthcare during a medical crisis, exacerbation of a disability, transportation and communication barriers and permanent damage to Plaintiff's professional reputation. Id. While Plaintiff cites several cases to support his conclusion that these harms are "irreparable," many of these cases do not state the proposition that Plaintiff assigns to them. For instance, Plaintiff claims that Dodds v. United States Department of Education establishes "that interruption of medical care constitutes irreparable harm." Id. at 15. However, Plaintiff's use of Dodds is unavailing because Dodds contemplates the irreparable harm from restricting an eleven-year-old transgender girl's use of the girls' restroom and does not discuss medical care or medicine. 845 F.3d 217, 221–22 (6th Cir. 2016). Similarly, Plaintiff cites Cunningham v. Adams to claim that damage to professional reputation can constitute irreparable harm. [Doc. 6, p. 16]. However, this opinion fails to bolster Plaintiff's position because the plaintiff in Cunningham did not make any argument about damage to reputation constituting irreparable harm, and in fact, reputation is not discussed in the opinion at all. 808 F.2d 815 (11th Cir. 1987). The other cases Plaintiff cites to support his arguments suffer from similar deficiencies, and thus remain unpersuasive.

Accordingly, Plaintiff's Emergency Motion for Temporary Restraining Order [Doc. 7] is **DENIED**. Plaintiff may still pursue additional preliminary relief after proper notice to Defendants.

### III.   Plaintiff's Motion to File Medical Documents Under Seal

Plaintiff further requests that the Court seal his medical records, which he refers to as Exhibit F3.[5] [Doc. 6]. Under Federal Rule of Civil Procedure 26(c), a court may issue an order to protect a party from annoyance, embarrassment, oppression or undue burden or expense for good cause. Fed. R. Civ. P. 26(c)(1). Courts determine whether there is good cause by balancing one party's "interest in obtaining access" against the other "party's interest in keeping the information confidential." Chi. Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313 (11th Cir. 2001). The First Amendment to the United States Constitution, however, provides a qualified right of access to trial proceedings which "requires the court to balance the respective interests of the parties." Id. In other words, "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992). As such, a court file must remain accessible to the public unless a party can show "extraordinary circumstances."

---

[5] Exhibit F3 corresponds to [Doc. 6-19].

Here, Plaintiff's medical records in the exhibit at issue contain sensitive personal information. [Doc. 6-19]. Specifically, the records include descriptions of Plaintiff's physical and mental health conditions and his medications. Id. The Court finds that, given the nature of the records and because Plaintiff's request to seal is narrowly tailored to protect sensitive medical information, Plaintiff has carried his burden to show that the public right of access is outweighed by Plaintiff's legitimate privacy interests. Accordingly, Plaintiff's Motion to File Medical Documentation Under Seal [Doc. 6] is **GRANTED**. The Clerk is **DIRECTED** to **SEAL** [Doc. 6-19].

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order [Doc. 7] is **DENIED**.[6] Pursuant to Standing Order 18-01, the Clerk is **DIRECTED** to refer this matter to the appropriate Magistrate Judge for further proceedings, including a frivolity determination pursuant to 28 U.S.C. § 1915(e)(2).

---

[6] Plaintiff's Motion to Withdraw Initial filing [Doc. 5] is **DENIED** as **MOOT** and his Motion to File Medical Documentation Under Seal [Doc. 6] is **GRANTED**.

**SO ORDERED** this 22nd day of April, 2025.

                                                          _____
                                                        **J. P. BOULEE**
                                                        United States District Judge